John Ed CLAY and wife, Marie Clay,
Plaintiffs-Appellants,

v.

JOHNS–MANVILLE SALES CORP.,
Raybestos-Manhattan, Inc.,
Defendants-Appellees.

Curtis T. BAILEY and wife, Effie
Bailey, Plaintiffs-Appellants,

v.

JOHNS–MANVILLE SALES CORP.,
Raybestos-Manhattan, Inc.,
Defendants-Appellees.

Nos. 80–5416, 80–5417.

United States Court of Appeals,
Sixth Circuit.

Argued March 3, 1982.

Decided Dec. 7, 1983.

As Amended Dec. 22, 1983.

Rehearing and Rehearing En Banc
Denied Jan. 26, 1984.

Michael Y. Rowland (argued), Gilreath, Pryor & Rowland, Knoxville, Tenn., for plaintiffs-appellants.

Fred H. Cagle, Jr. (argued), Frantz, McConnell & Seymour, W. Kyle Carpenter, Knoxville, Tenn., for Johns-Manville.

Donald F. Paine Egerton, McAfee, Armistead & Davis, Harry P. Ogden, Dwight E. Tarwater (argued), Knoxville, Tenn., for Raybestos.

Before EDWARDS, Circuit Judge, PECK, Senior Circuit Judge, and CHURCHILL,* District Judge.

* Honorable James P. Churchill, United States District Judge for the Eastern District of Michigan, Southern Division, sitting by designation.

GEORGE CLIFTON EDWARDS, Jr., Circuit Judge.

In these two cases plaintiffs John Ed Clay and Curtis Bailey, each joined by his wife, brought actions for damages against defendants Johns-Manville Sales Corporation and Raybestos-Manhattan, Inc., on the basis of products liability claims resulting from plaintiffs' exposure to asbestos containing products manufactured by the defendants. The cases were tried in the United States District Court for the Eastern District of Tennessee and ended in jury verdicts for the defendants.

Appellants urge that the District Judge committed reversible error in a variety of ways. In our judgment, three of these require our discussion.

■ Before turning to these issues, however, we must point out that Johns-Manville as previously recognized in a number of cases which we cite in the footnote below,[1] has filed for reorganization under Chapter 11 of the Bankruptcy Act of 1979, 11 U.S.C. § 1101, *et seq.* Supp. III 1979, in the Bankruptcy Court for the Southern District of New York. This action brought into play the automatic stay provision set out in § 362(a)(1) of the Act, which reads:

§ 362. **Automatic stay**

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . . .

The language of § 362(a)(1) quoted above states flatly that filing of a bankruptcy

1. *Cathey v. Johns-Manville Sales Corp.*, 711 F.2d 60 (6th Cir.1983); *Lynch v. Johns-Manville Sales Corp.*, 701 F.2d 42–44 (6th Cir.1983); *Murphree v. Raybestos-Manhattan, Inc.*, 696 F.2d 459 (6th Cir.1982).

petition "operates as a stay." Although no motion to stay has been filed by Johns-Manville in this court, we hereby order the appeal as to Johns-Manville to be stayed, pending further action by the parties or the Bankruptcy Court in the Southern District of New York, and we further instruct the clerk to place the file as it pertains to Johns-Manville in inactive status, pending the actions just referred to.

## I.

■ Turning now to the other issues remaining in relation to defendant Raybestos-Manhattan, the first issue pertains to the judge's instruction to the jury on the possible effect of a general 10-year statute of limitations, T.C.A. § 29–28–103, which became effective in the State of Tennessee on July 1, 1978. This statute was amended approximately one year later by the Tennessee legislature by the adoption of T.C.A. § 29–28–103(b) which provided that the 10-year statute of limitations was inapplicable "to any action resulting from exposure to asbestos." The District Judge in these cases instructed the jury in effect that if the jury found that plaintiffs during the year the 10-year statute of limitations was in effect for all cases discovered or should have discovered that they were suffering from asbestosis, then the jury should find for the defendants.

Although it seems obvious to us that the legislature of Tennessee, in adopting the 10-year statute of limitations without any exemption of asbestos disease in the first instance, simply made a serious error which it has now sought to correct, appellees argue that the Tennessee Constitution and the Tennessee Supreme Court have mandated the interpretation which the District Judge gave to this jury. See Article I, Section 20 of the Tennessee Constitution, which provides: "That no retrospective law, or law impairing the obligation of contracts, shall be made." See Ford Motors v. Moulton, 511 S.W.2d 690 (Tenn.1974), cert. denied, 419 U.S. 870, 95 S.Ct. 129, 42 L.Ed.2d 109 (1974), reaffirmed, 533 S.W.2d 295 (Tenn.1976).

This would obviously produce a harsh result from what appears clearly to have been a legislative mistake. Even so, the federal courts in the exercise of their diversity jurisdiction would be obligated to follow state law as that law has been construed by the state's highest court, absent reason to believe from subsequent state court developments that such would no longer be the ruling of the Supreme Court of Tennessee.

Such reason has now been found in a recent case in this court which raised this identical issue from a similar ruling by the same District Judge. In *Murphree v. Raybestos-Manhattan, Inc.,* 696 F.2d 459 (6th Cir.1982), with one of this court's Tennessee judges writing for a unanimous panel, the court held on the principal legal issue presented in our instant case:

"The main question of law on appeal in this diversity case is whether Tennessee's ten year statute of limitations based on sale, adopted July 1, 1978, as T.C.A. § 29–28–103 (action 'must be brought within ten years from the date ... product ... first purchased for use') created for defendant a vested right barring plaintiff's claim despite a July 1, 1979, statutory amendment excluding asbestos-related disease actions from this ten year ceiling.[1] The Tennessee appellate courts have not spoken directly on this issue. We hold that Tennessee's vested rights doctrine based on Tennessee Constitution Article I Section 20 does not bar the claim and that the 1979 amendment is applicable as a matter of law.

"Interpretation of Tennessee's various statutes of limitations governing products liability actions has created troublesome problems for Tennessee courts in the past two decades. In 1969 the Tennessee Supreme Court in *Jackson v. General Motors,* 223 Tenn. 12, 441 S.W.2d 482 (1969), adopted a rule widely criticized by the bench and bar of the state. It held that Tennessee's limitations statute in products cases begins to run on the date of purchase of the product and not on the date of injury or discovery. Thus, in some cases of latent disease and injury the limitation period expired before discovery by the victim. The legislature acted promptly to overrule the holding in *Jackson* by amending the statute.

In 1974 the Tennessee Supreme Court, with Justice William Fones dissenting, prevented the amendment from becoming effective. The Court held in *Ford Motor Company v. Moulton,* 511 S.W.2d 690 (Tenn.1974) that under Tennessee vested rights doctrine, based on Article I, Section 20 of the Tennessee Constitution, the statutory amendment running the limitation period from discovery could not be applied retroactively. Thus, the seller who sold his product outside the statutory period was held to have a vested right to defeat an action for injuries discovered and sued upon during the statutory period.

"In 1975, shortly after the decision in *Moulton,* a new Tennessee Supreme Court was elected. Of the members of the old Court, only Justice William Fones remained. He became the first Chief Justice of the new Court. The new Court, in an opinion by Justice Joe Henry (a beloved member of that Court until his recent untimely death), promptly overruled *Jackson v. General Motors, supra,* and held that the limitations statute runs from discovery, not sale. In *McCroskey v. Bryant Air Conditioning Co.,* 524 S.W.2d 487 (Tenn.1975), Justice Henry held that 'reason, logic and fundamental fairness' demanded that the running of the statute begin upon discovery, for it is ludicrous to have a 'law which charges a litigant with sleeping upon any right which he does not have' just as one cannot 'harvest a crop never planted, or burn down a house never built.' 524 S.W.2d at 489. The *McCroskey* opinion announces very clearly that judicial policy in Tennessee does not favor doctrines that activate statutes of limitations before the plaintiff has knowledge of his injury.

"Although the Tennessee Supreme Court in *McCroskey* did not expressly overrule the vested rights doctrine as applied to statutes of limitations in *Moulton,* it is clear to us that the *Moulton* vested rights doctrine no longer has any vitality. Justice Henry's *McCroskey* opinion quotes from that part of Justice Fones' *Moulton* dissent that quotes in turn from an opinion of this Court by Judges Phillips, Edwards and Celebrezze. In *McCroskey* Justice Henry said:

Our own Chief Justice [Fones] dissented from the majority opinion in *Ford Motor Company v. Moulton, supra.* We quote from his dissent:

"The following principles are stated concisely in *Hodge v. Service Machine Company,* 438 F.2d 347 (6th Cir.1971).

'A cause of action accrues when a suit may be maintained upon it. Black's Law Dictionary 37 (4th ed. 1951). A suit may not be brought upon a cause of action until it exists, and a cause of action does not exist until all its elements coalesce. In civil actions for damages, two elements must coalesce before a cause of action can exist: (a) a breach of some legally recognized duty owed by the defendant to the plaintiff; (b) which causes the plaintiff some legally cognizable damage.'

To hold that a products liability action, which is a recognized legal right, is barred by a statute of limitations before any injury is sustained, deprives a person of the opportunity of redress for an injury done him in his goods or person by due process of law, contrary to our Constitution. 511 S.W.2d at 697."

524 S.W.2d at 490.

Regarding *Moulton,* the *McCroskey* Court stated that it did not need to reach the retroactivity—i.e. vested rights—question. However, the Court did make the following observation: 'We, therefore, neither reaffirm nor reverse *Ford Motor Co. v. Moulton,* but we have quoted, with approval, from the dissent of our present Chief Justice.'

"We do not find that the Tennessee Supreme Court has had occasion to speak on the retroactivity question in products cases since *McCroskey.* Justice Henry's language in that case quoting from Justice Fones' reliance on our opinion in *Hodge v. Service Machine Co.,* 438 F.2d 347 (6th Cir.1971), and our knowledge of the careful and progressive character of the Tennessee Supreme Court, make it clear to us that the old vested rights doctrine as applied to statutes of limitations in *Moulton* is no longer the law in Tennessee and will be overruled when the occasion arises.

"Tennessee will no longer apply under Article I Section 20 of its Constitution a vested rights doctrine to defeat a statutory amendment that runs a statute of limitations from the time of discovery of the injury. The Tennessee Supreme Court will no longer use the vested rights doctrine to prevent the Tennessee legislature from ameliorating the harshness of a rule that bars a plaintiff's claim before he discovers it.

"Thus the plaintiff's claim here is not barred under Tennessee law. The statutory amendment excepting asbestos-related disease causes of action from the ten year limitations statute based on sale does not abridge any right protected under the Tennessee Constitution. This brings the Tennessee law into line with federal law on vested rights as applied to statutes of limitations under the Federal Constitution. The United States Supreme Court has long since rejected old doctrines of substantive due process which said that a liberalizing change in a statute of limitations abridges vested rights. *See Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628, *reh. denied,* 325 U.S. 896, 65 S.Ct. 1561, 89 L.Ed. 2006 (1945) (statutory amendment abolishing limitations defense did not deprive defendant of any right); *Campbell v. Holt,* 115 U.S. 620, 6 S.Ct. 209, 29 L.Ed. 483 (1885) (statutes of limitations go to matters of remedy rather than destruction of fundamental rights). In *Donaldson, supra,* Justice Jackson stated for the Court:

Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizens from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. *Order of Railroad Telegraphers v. Railway Express Agency,* 321 U.S. 342, 349 [64 S.Ct. 582, 586, 88 L.Ed. 788]. They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a "fundamental" right or what used to be called a "natural" right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control.

*Id.* 325 U.S. at 314, 65 S.Ct. at 1142.

"Therefore, the District Court erred in allowing the statute of limitations issue to go to the jury under a charge that allowed the jury to base a verdict for defendant on the 10 year statutory ceiling on products liability cases. The 1979 statutory amendment excepting asbestosis cases applies to this case and is not made ineffective by the vested rights doctrine.

"1 The trial court made the issue of the application of the ten year statute a jury question, charging the jury as follows:

"Under Tennessee Products Liability Law, if a plaintiff discovered, or should have discovered, his injury between July 1st, 1978 and June 30th, 1979, then he may not recover damages if the product which allegedly caused his injury was first purchased for use or consumption more than ten years prior to the date on which his lawsuit was filed.

"It should be remembered that this ten year period of limitation applies only when the plaintiff discovered, or should have discovered, his injury during the year beginning July 1st, 1978 and ending June 30th, 1979.

"This lawsuit was filed on December 8th, 1979. Therefore, if you find that plaintiff discovered, or should have discovered, his injury between July 1st, 1978 and June 30th, 1979, then, you should not consider exposure of plaintiff's decedent to defendant's products which were purchased for use or consumption before December 7th, 1969."

We are bound by this opinion and we find occasion to state that we agree with it. This issue, of course, requires vacation of the judgment below and remand for retrial.

## II.

We turn now to the second issue which requires our consideration, namely whether

the District Judge erred in excluding a deposition taken from a witness, Dr. Kenneth Wallace Smith, in *DeRocco v. Forty-eight Installation, Inc.,* No. 7880 (W.D.Pa.1974). At the time of the *DeRocco* proceeding, Dr. Smith was 63 years of age and had acquired his knowledge about asbestos disease in the employment of the Johns-Manville Corporation, the largest asbestos manufacturer in the field. Serving Johns-Manville during a good portion of his 22 years of employment as the only full-time physician in the organization, Dr. Smith's deposition is peculiarly relevant to the extent of the knowledge possessed by manufacturers of the hazards of asbestos containing products during the years when appellants Clay and Bailey allege they were exposed to asbestos.

Dr. Smith had died before the trial of this case. The key question in relation to the admissibility of this evidence is posed by the language of Rule 804(b)(1) of the Federal Rules of Evidence, which reads:

**Rule 804. Hearsay Exceptions; Declarant Unavailable**

**(a) Definition of unavailability.** "Unavailability as a witness" includes situations in which the declarant—

    \*    \*    \*    \*    \*    \*

**(b) Hearsay exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

**(1) Former testimony.** Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

To ascertain the meaning of "predecessor in interest," an examination of legislative history is necessary. As originally proposed by the Supreme Court, Rule 804(b)(1) would have admitted prior testimony of an unavailable witness if the party against whom it is offered or a person "with a motive and interest" similar to him had an opportunity to examine that witness. H.R.Rep. No. 650, 93d Cong., 1st Sess. 15 (1973), *reprinted in* 1974 U.S.CODE CONG. & AD.NEWS 7051, 7088. The House of Representatives substituted the current "predecessor in interest" language. The House Committee on the Judiciary offered the following explanation for the alteration:

The Committee considered that it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party. The sole exception to this, in the Committee's view, is when a party's predecessor in interest in a civil action or proceeding had an opportunity and similar motive to examine the witness. The Committee amended the Rule to reflect these policy determinations.

H.R.Rep. No. 650, U.S.CODE CONG. & ADMIN. NEWS 1974, p. 7088, *supra.*

Although the Senate accepted the change proposed by the House, the Senate Committee on the Judiciary made the following observation about the import of the House actions:

Former testimony.—Rule 804(b)(1) as submitted by the Court allowed prior testimony of an unavailable witness to be admissible if the party against whom it is offered or a person "with motive and interest similar" to his had an opportunity to examine the witness.

The House amended the rule to apply only to a party's predecessor in interest. Although the committee recognizes considerable merit to the rule submitted by the Supreme Court, a position which has been advocated by many scholars and judges, we have concluded that the difference between the two versions is not great and we accept the House amendment.

S.Rep. No. 1277, 93d Cong., 2d Sess. 28 (1974), *reprinted in* 1974 U.S.CODE CONG. & AD.NEWS 7051, 7074.

■ We join the Third Circuit in agreeing with the Senate Committee that the

difference between the ultimate revision and the Rule, as originally proposed, is "not great." *Lloyd v. American Export Lines, Inc.,* 580 F.2d 1179, 1185 (3d Cir.), *cert. denied,* 439 U.S. 969, 99 S.Ct. 461, 58 L.Ed.2d 428 (1978). Accordingly, we adopt the position taken by the *Lloyd* court which it expressed in the following language:

> While we do not endorse an extravagant interpretation of who or what constitutes a "predecessor in interest," we prefer one that is realistically generous over one that is formalistically grudging. We believe that what has been described as "the practical and expedient view" expresses the congressional intention: "if it appears that in the former suit a party having a like motive to cross-examine about the same matters as the present party would have, was accorded an adequate opportunity for such examination, the testimony may be received against the present party." Under these circumstances, the previous party having like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party.

*Id.* at 1187. *See also Rule v. International Association of Bridge, Structural Ornamental Iron Workers, Local 396,* 568 F.2d 558, 569 (8th Cir.1977); *Weinstein & Berger, Evidence* § 804(b)(1) [04] at 804–67 (1969) ("[C]ases decided since the enactment of Rule 804(b)(1) for the most part indicate a reluctance to interpret 'predecessor in interest' in its old, narrow, and substantive law sense, of privity"). *Contra In re IBM Peripheral EDP Devices Antitrust Litigation,* 444 F.Supp. 110 (N.D.Cal.1978).

■ Our examination of the record submitted in this case satisfies us that defendants in the *DeRocco* case had a similar motive in confronting Dr. Smith's testimony, both in terms of appropriate objections and searching cross-examination, to that which Raybestos has in the current litigation. We therefore hold that the purposes of Rule 804(b)(1) will be fulfilled by the admission of Dr. Smith's deposition on retrial.

### III.

At trial appellants Clay and Bailey filed a motion seeking summary judgment against both original defendants, maintaining that they were entitled to a ruling that the defendants were estopped from raising the issue of whether they knew or reasonably should have known of the danger associated with use of their products containing asbestos. In this regard plaintiffs rely upon *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076 (5th Cir.1973), *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974).

■ While Johns-Manville, an original defendant in this case (now excluded because of its filing for bankruptcy) was a party to *Borel,* Raybestos, the only defendant with whom we deal in this opinion, was not. Collateral estoppel prevents *a party* from relitigating a question put in issue and conclusively determined against that party, where such party had a full and fair opportunity to litigate the issue in the first suit. It is clear that we do not have before us a proper claim for summary judgment on the basis of collateral estoppel on the part of plaintiffs against remaining defendant Raybestos.

■ In *Parklane Hosiery v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), Justice Stewart's opinion for a nearly unanimous Court gave limited sanction to the offensive use of collateral estoppel. On retrial of this case, we commend to the District Judge's attention the standards set forth in Sections A and B of the *Parklane* opinion and suggest that he allow plaintiffs opportunity to prove, if they can, that they are entitled to the use of the doctrine of offensive collateral estoppel. We also, however, recognize the broad discretion that the Supreme Court has vested in the District Judge in determining whether or not to make use of this doctrine. Recognizing the difficulty of applying the doctrine equitably, Justice Stewart concluded for the Court:

> We have concluded that the preferable approach for dealing with these problems in the federal courts is not to preclude

the use of offensive collateral estoppel, but to grant trial courts broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

439 U.S. at 331, 99 S.Ct. at 651–52.

The judgments entered below against plaintiffs are vacated and the cases are remanded for retrial against defendant Raybestos in accordance with this opinion.