Kevin **VOGT** and Jeanette **Vogt, Plaintiffs,**

v.

**EMERSON ELECTRIC COMPANY and Sears, Roebuck & Company, Defendants.**

Civ. No. 89–CV–1008.

United States District Court, M.D. Tennessee, Nashville Division.

Aug. 10, 1992.

508

Charles M. Merkel, W. Stephens Cox, Merkel & Cocke, Clarksdale, Miss., for plaintiffs.

Leo M. Bearman, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Albert Clyde Harvey, Robert L. Moore, Thomason, Hendrix, Harvey, Johnson, Mitchell, Memphis, Tenn., Samuel Franklin, Adam K. Peck, Lightfoot, Franklin, White & Lucas, Birmingham, Ala., for defendants.

## ORDER

ECHOLS, District Judge.

After duly considering the pleadings and file in this matter, it is hereby ORDERED

that the Defendants' Motion to Amend the Pretrial Order is hereby granted, the Parties' Joint Request for a waiver of Local Rule 12(c)(6) regarding the testimony of expert witnesses is hereby denied, and the recommendation of the Magistrate Judge to deny the parties' cross motions for partial summary judgment is hereby adopted.

## REPORT AND RECOMMENDATION

SANDIDGE, United States Magistrate Judge.

June 11, 1992.

In accordance with the provisions of 28 U.S.C. sec. 636(b)(1)(B), this matter was referred to the undersigned by order dated February 16, 1990 from District Judge Nixon for consideration, submission of proposed findings of fact, and recommendation for disposition of the following motions:

1. Motion of the plaintiffs, Kevin Vogt and Jeanette Vogt (filed Jan. 17, 1991; Docket Entry No. 69) for partial summary judgment.

2. Motion of the defendants, Emerson Electric Company and Sears, Roebuck and Company (filed Dec. 31, 1990; Docket Entry No. 63) for partial summary judgment.

This case is before the court on the basis of diversity of citizenship.

In 1984, plaintiff, Kevin Vogt, purchased a 10 inch radial arm saw manufactured by Emerson Electric and sold by Sears under the Craftsman name. In 1989, Kevin Vogt caught his hand in the saw resulting in the loss of three fingers. Mr. Vogt brings suit under theories of strict liability, negligence, and breach of warranty. Specifically, he alleges that Emerson should have equipped the saw with a lower retractable side blade guard and that the saw's antikickback rod assembly was improperly placed in a position offset from the blade itself thereby decreasing its utility as a safety device. Jeanette Vogt's claim rests on loss of consortium as the wife of Kevin Vogt. Plaintiffs seek $2 million in compensatory damages and $5 million in punitive damages.

Plaintiffs filed a motion seeking partial summary judgment on the issue of strict liability with respect to the design defects and punitive damages. Defendants filed a cross-motion on the issue of punitive damage liability.

## A. Plaintiffs' Motion for Partial Summary Judgment

Plaintiffs base their motion on federal common law which recognizes the doctrine of positive collateral estoppel. Positive collateral estoppel precludes relitigation of an issue decided against a defendant in a previous case. *Allen v. McMurray*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Plaintiffs argue that the law assumes liability in this case because the defendants were held liable in a prior case.

In response, the defendants contend that *Erie Railroad Company v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires application of state law and that Tennessee does not recognize positive collateral estoppel in this type of case. In the alternative, the defendants argue that positive collateral estoppel under federal law is also inapplicable.

The United States Court of Appeals for the Sixth Circuit has previously addressed the *Erie* question. The defendants rely on *Hackler v. Indianapolis and Southeastern Trailways, Inc.*, 437 F.2d 360 (6th Cir. 1971) and *Mackris v. Murray*, 397 F.2d 74 (6th Cir.1968). In both cases, the Court of Appeals held that state law governs collateral estoppel in diversity cases.

Plaintiffs cite *Clay v. Johns–Manville Sales Corp.*, 722 F.2d 1289 (1983), arguing that *Clay* overturns the earlier holdings. In *Clay*, the court remanded the diversity case to the district court with instructions that the court allow the plaintiff to present proof demonstrating he was entitled to collateral estoppel under federal law. The *Clay* court did not face squarely the *Erie* problem. Therefore, it is not entirely clear whether *Clay* intended to overturn the clear precedent in the earlier cases.

More recently, several district courts in the circuit have split on the issue. *Compare Bassey and Selesko, P.C. v. Condon*, 694 F.Supp. 327 (E.D.Mich.1988) with *Har-*

*rison v. Celotex Corp.,* 583 F.Supp. 1497 (E.D.Tenn.1984).

Because resolution of the issue is the same whether federal or state law is applied, I conclude that it is unnecessary to decide whether *Erie* requires application of state law.

Plaintiffs do not argue how Tennessee's law of collateral estoppel applies to the facts of this case. Perhaps this is because it is inapplicable.

■ Defendants correctly argue that state law requires mutuality of the parties before the doctrine becomes applicable. *Gann v. International Harvester Co. of Canada, Ltd.,* 712 S.W.2d 100 (Tenn.1986). Because the current plaintiffs have not been privy to any of the prior lawsuits in which the defendants were involved, the doctrine is not applicable.

Furthermore, *Allgood v. Nashville Machine Co. Inc.,* 648 S.W.2d 260, 263 (Tenn. App.1983), suggests that it is unfair to hold a defendant liable for a prior adverse judgment if the defendant cannot use a prior favorable judgment to his advantage. The defendants have litigated 24 prior cases. They have prevailed in 20 of these cases. Plaintiffs' Interrogatory No. 11, Docket Entry 64, Dec. 31, 1990. Mathematically speaking, the defendants have a stronger argument for application of the doctrine than do the plaintiffs.

Finding no precedent to the contrary, I conclude that the plaintiffs would not be allowed to assert collateral estoppel under Tennessee law.

■ Under federal common law, the trial court retains broad discretion in the application of positive collateral estoppel. *Parklane Hosiery Company v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). The ultimate test is fairness to the defendant. *Id.* at 331, 99 S.Ct. at 651–52. *Parklane* expressly recognizes that reliance on a judgment inconsistent with similar judgments in favor of the defendant as the basis for estoppel is unfair. *Id.* at 330, 99 S.Ct. at 651. As noted earlier, defendants have prevailed in 20 of 24 similar cases that have gone to trial.

Plaintiffs argue that the defendants have won because of their ability to hide evidence from the opposing party and ultimately the trier of fact. Several of these cases were tried in the federal courts. Plaintiffs do not explain how the defendants have been able to circumvent the liberal federal rules of discovery. For example, the court has granted to the plaintiffs in this case three separate motions to compel discovery.

Plaintiffs rely on the decision in *Salmon v. Sears and Emerson,* Case No. DC 83–286–D–O, U.S. District Court, Northern District of Mississippi, as the case that establishes liability in this case. Defendants argue that the saw and the owner's manual with its accompanying safety warnings are different than the saw and manual involved in the *Salmon* case. Because tort cases are inherently fact specific, this change in the factual scenario, if proven at trial, could affect the court's verdict. Thus, liability should be reestablished to reflect the changed factual scenario. *See Deviner v. Electrolux Motor,* 844 F.2d 769, 774 (11th Cir.1988).

Accordingly, I conclude that collateral estoppel under federal law also fails to provide a basis for the plaintiff's motion for partial summary judgment.

B. Defendants' Cross–Motion for Summary Judgment on the Issue of Punitive Damage Liability

■ The defendants' argument for limited summary judgment as to punitive damage liability is twofold. First, defendants argue that their conduct was not so egregious as to warrant punitive damage liability under Tennessee law. Second, they argue that current Tennessee law violates the Due Process Clause of the Fourteenth Amendment because Tennessee's method for imposing punitive damage liability is standardless.

Since the time the parties filed their briefs, the law has changed. In *Pacific Mutual Life Ins. Co. v. Hayslip,* — U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the Supreme Court examined whether puni-

tive damages violate the Due Process Clause of the Fourteenth Amendment. The Court concluded that punitive damages are not per se unconstitutional when juries are properly instructed and adequate post-trial review of jury awards is available. *Pacific Mutual,* —— U.S. at ——, 111 S.Ct. at 1046.

In response to *Hayslip,* the Tennessee Supreme Court recently reformulated Tennessee's law on punitive damages. *Hodges v. S.C. Toof & Company,* 833 S.W.2d 896 (Tenn.1992). *Hodges* is retroactively applicable to all pending cases. *Hodges,* 833 S.W.2d at 902. In *Hodges,* Tennessee clearly joins a growing doctrinal trend away from the liberal imposition of punitive damage awards. The court wrote:

> Further, because punitive damages are to be awarded only in the most egregious of cases, a plaintiff must prove the defendant's intentional, fraudulent, malicious, or reckless conduct by clear and convincing evidence. [emphasis added]

*Id.* at 901.

Clear and convincing evidence means that there can be no serious doubt about the correctness of the conclusions drawn from the evidence. *Id.* at 901, n. 3. By choosing a clear and convincing standard, *Hodges* has increased the plaintiffs' burden of proof to show that the defendants' conduct falls within that category of cases which are "most egregious".

Recklessness is when a "person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Id.* at 901. This definition tracks language in the Tennessee criminal code. *Id.*

As further evidence of the apparent doctrinal change that has taken place in Tennessee, *Hodges* requires Tennessee trial courts to grant a bifurcated trial upon motion of the defendant. *Id.* at 901. More evidentiary constraints are placed on the plaintiff during the liability phase. *Id.* The trial judge must approve jury awards on punitive damages. In doing so, the trial judge must set forth in writing both his findings of fact and conclusions of law that support the approval or disapproval of the punitive damage award. *Id.* at 902. In short, *Hodges* seeks to restrict punitive damage liability in Tennessee.

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."

In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *SEC v. Blavin,* 760 F.2d 706, 710 (6th Cir.1985); *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.1979). The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Smith,* 600 F.2d at 63.

Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* 477 U.S. at 247–49, 106 S.Ct. at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

Taken in the light most favorable to the plaintiffs, the material facts are as follows:

1. The accident would not have occurred had the saw been equipped with a retractable blade guard or had the anti-kickback device been set directly behind the blade. Robinson deposition at 35–52, 69–72, 103–104, Docket Entry 89, July 31, 1991.

2. These design defects did not comply with industry standards, regulations, or practice. Neither did the safety warnings that accompanied the saw. The defendants equip a similar 12 inch radial arm saw with a retractable blade guard. Hydes deposition at 16–19, 23–26, 31–37, Docket Entry 89, July 31, 1991.

3. Emerson manufactured a retractable blade guard as an accessory that sold for $22.49. Pretrial Order at 5, Docket Entry 91, Sept. 24, 1991. The manufacturing cost is roughly $4.00. Hyde deposition at 75, Docket Entry 89, July 31, 1991. The availability of the optional blade guard is not well publicized. Pretrial Order at 5, Docket Entry 91, Sept. 24, 1991.

4. The defendants sold 1,671,656 of the 10 inch radial arm saws between 1970 and 1983. Pretrial Order at 5, Docket Entry 91, Sept. 24, 1991.

5. The defendants have faced 34 similar product liability suits since 1970. Of these 34 suits, the defendants have not been liable in 23 cases, have settled 7 cases, and received a negative verdict 4 times. Plaintiffs' Interrogatory No. 11, Docket Entry 64, Dec. 31, 1990.

The question becomes whether Tennessee law recognizes punitive damage liability on these facts.

■■■■■ Generally, punitive damage liability is a subjective matter specially suited for jury determination. Nevertheless, it is not improper to dispose of punitive damage liability on summary judgment. *See Miles v. Kohli & Kaliher Assoc. Ltd.*, 917 F.2d 235 (6th Cir.1990); *see also Womack v. Gettelfinger*, 808 F.2d 446, 452 (6th Cir. 1986).

■■■ Under *Hodges*, Tennessee law awards punitive damages only in the most egregious of cases. Because *Hodges* is recent precedent modifying Tennessee punitive damage law, additional precedent is not yet available from Tennessee on how to apply facts to the new standard. Consequently, the federal courts must make their best *Erie* prediction as to how *Hodges* would be applied by a Tennessee court deciding this motion.

Radial arm saws are inherently dangerous. Injury is the clear result when a body part comes into contact with the moving saw blade. The saw design must expose the blade to allow the material which is to be cut access to the blade. Therefore, the user is also exposed to the blade. The saw cannot be made foolproof. Consequently, the manufacturer can expect that some accidents will occur as a result of user mishap. Thus, a minimum number of prior injuries will not necessarily put a manufacturer on notice that a product is poorly designed.

Plaintiffs argue that there have been numerous serious injuries over the years resulting from the use of the 10" saw without the guard. There have been 34 lawsuits filed against the defendants. This represents roughly .002% of the 1,671,656 10 inch radial arm saws manufactured and sold by the defendants. There could have been (and probably were) other injuries in which the injured party chose not to file a lawsuit. In fact, plaintiffs make this assertion, Plaintiffs' Brief at 5, Docket Entry 89, July 31, 1991, but do not support the assertion with a reference to the factual record. In any event, the number of lawsuits filed against the defendants serves as a rough barometer of the rate at which mishaps occurred.

Plaintiffs also note that the defendants included the lower blade guard on their 12 inch model as part of the standard design. This arguably demonstrates that the defendants were aware of the benefits that a blade guard could provide and should be factored into the punitive damage calculus. Defendants did provide a blade guard as an optional accessory. Thus, the blade guard that could have prevented this accident was available to Mr. Vogt. Apparently, Mr. Vogt did not know of the optional blade

guard because the defendants did not adequately publicize its availability.

As the defendants concede in their brief, these facts create a triable question as to compensatory liability. More, however, is needed to establish punitive damage liability under *Hodges*. Plaintiffs must demonstrate that this case is more than a run of the mill products liability case. They must demonstrate recklessness under a clear and convincing evidentiary standard. *Hodges*, 833 S.W.2d at 901.

In their brief, plaintiffs argue that the defendants are morally culpable for four reasons. First, the degree of deviation from industry standards is so severe as to justify punitive damage liability. Second, the explanations that the defendants have given for their deviation from industry standards are so ludicrous as to demonstrate bad faith. Third, defendants' failure to cooperate in discovery is evidence of their moral culpability. Finally, the punitive damage award against the defendants in the *Salmon v. Sears, supra*, case justifies submitting the punitive damage issue to the jury in this case.

Plaintiffs argue that no industry participant other than the defendants would manufacture nor sanction the manufacture of a radial arm saw that is not equipped with a lower retractable blade guard or that is designed with the anti-kickback device placed in an off-set position. Therefore, defendants' failure to join other industry participants in their design choices is evidence of egregious conduct.

Furthermore, plaintiffs argue that numerous other injuries resulted from the use of the 10 inch saw without the lower blade guard and that the defendants failed to modify their design choice in response.

Plaintiffs also note that the defendants include a lower blade guard as part of the standard design on a similar 12 inch model. I agree that, if proven at trial, these facts could also cause a reasonable jury to find recklessness.

Plaintiffs spend considerable energy demonstrating that the defendants' defenses are meritless. Plaintiffs argue that punitive damages are proper because the defense of the defendants is so meritless that it demonstrates bad faith. Plaintiffs, however, carry the initial burden of production. Furthermore, if asserting a losing defense were the basis for imposing punitive damage liability, every losing defendant would conceivably face punitive damage liability.

Third, plaintiffs argue that the defendants' failure to cooperate during discovery in this case and prior cases is evidence of the defendants' moral culpability. The proper remedy for uncooperative behavior during discovery is to move for judicial sanctions under Federal Rules of Civil Procedure, Rule 37. Plaintiffs do not cite authority for using uncooperative behavior during discovery as grounds for punitive damage liability.

Furthermore, plaintiffs do not adequately explain why the defendants have consistently prevailed in prior, similar lawsuits. Federal rules of discovery are liberally construed. Prior plaintiffs had the same opportunities for discovery as do the plaintiffs in this case. Even in the prior cases litigated in state courts, it is difficult to see how the defendants could successfully hide evidence from prior plaintiffs and the trier of fact.

Finally, plaintiffs argue that the punitive damage award in *Salmon* justifies punitive damage liability in this case. *Hodges* changed the standard by which punitive damages are awarded in Tennessee. However, *Salmon* arguably put the defendants on notice that their product was unreasonably dangerous.

It is my conclusion that there are genuine issues of material fact that, if proven at trial, could lead a reasonable jury to conclude that the defendants' conduct was reckless as defined under *Hodges*. Consequently, it is my conclusion that the issue of punitive damage liability cannot be appropriately decided on summary judgment.[1]

1. At the appropriate time, the defendants are free to move for a judgment as a matter of law pursuant to the Federal Rules of Civil Procedure 50.

## RECOMMENDATION

I recommend that the plaintiffs' motion be denied and that the defendants' motion also be denied. ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of receipt of this notice, and must state with particularity the specific portions of this Report, or the proposed findings or recommendation to which objection is made. Failure to file objections within the specified time can be a waiver of the right to appeal the District Court's Order. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).