ROSENBERG, ROBIN L„ Associate Judge.
Abbey Rich, both in her individual capacity and as the personal representative of her late husband’s estate, appeals a final judgment entered by the trial court after a jury found that the defendants were not liable for injuries her husband, Fred Rich, suffered as a result of contracting mesothelioma.[1] She raises five issues on appeal: (1) the trial court erred by allowing the defendants to use the former testimony of unavailable witnesses without establishing that the Riches, or their predecessors in interest, were afforded an opportunity to examine the witnesses; (2) the trial court erred by instructing the jury to answer a question of law; (3) the trial court erred when it refused to strike the testimony of an expert witness who was not properly disclosed until the twelfth day of trial; (4) the trial court erred by allowing expert testimony that was beyond the scope of the expert’s expertise; and (5) the trial court erred by refusing to grant the Riches’ motion for new trial. We affirm on all issues and write only to address the first issue raised by the Estate.
In 1957, the Riches moved into a home in Brooklyn, New York that was located *905 off of the Belt Parkway. Eighteen-wheelers used a nearby service road, shaking the Riches’ home as they passed by. A crack started to form in one of the downstairs bedrooms, and Fred took it upon himself to repair it. For several years in the late 1960s and early 1970s, he plastered the wall using Bondex-brand plaster.
Fred grew weary of applying plaster every month and, in approximately 1960, decided to replace the walling with a piece of 8-by-10 sheetrock made by Kaiser Gypsum. He used Kaiser Gypsum’s joint compound to join the new board with the existing wall. Kaiser Gypsum’s joint compound came in powder form, so Fred had to mix it with water before he could apply it to sheetrock. The wall nevertheless continued to crack, and Fred repeated the patch job using the Kaiser Gypsum powdered joint compound once or twice per year through the 1960s. “GP Ready-Mix,” a pre-mixed joint compound manufactured by Georgia Pacific, became available in the early 1970s, and Fred switched brands so he would not have to mix his own joint compound.
In order to make the edges and surfaces smooth, Fred had to sand down the plaster and joint compound after he was done patching the crack or replacing the sheet-rock. He breathed in the powder as he sanded and, by the end of the day, he was always covered in dust. Decades later, long after the Riches had retired to Florida, Fred started to have trouble breathing. He was diagnosed with mesothelioma, an incurable cancer of the lungs that is directly linked to asbestos exposure. Fred Rich filed suit against Kaiser Gypsum, Union Carbide, and R.T. Vanderbilt, alleging that the asbestos they used or manufactured caused his disease.
At trial, each defendant focused its respective arguments on Fred’s exposure to its asbestos in particular. Each defendant presented testimony showing why its product could not have been purchased by Fred or that it did not supply asbestos to the other defendants during the relevant time period. Both Union Carbide and Kaiser Gypsum sought to publish the former testimony of two unavailable witnesses to support this contention.
Union Carbide relied upon the deposition of William Lehnert, a former employee of Georgia Pacific. Lehnert’s deposition was previously taken in a case referred to as the “Kavcmaugh” case in which Union Carbide was a defendant. The plaintiff in Kavanaugh was a carpenter who also worked with GP Ready-Mix. Lehnert’s deposition focused primarily on his use of asbestos throughout his career and Georgia Pacific’s knowledge of its harmful effects. He testified that in the mid to late 1960s, Georgia Pacific primarily relied upon Philip Carey asbestos or alternatively, Johns-Manville asbestos (rather than Union Carbide’s “Calidria” asbestos) in its ready-mix joint compound. Additionally, Lehnert testified that Georgia Pacific began making asbestos-free Ready-Mix starting in 1972.
Kaiser Gypsum relied upon the deposition of George Kirk, a historian and former employee of the company. Kirk had previously testified in the “Rendle” case, in which Kaiser Gypsum was a defendant. His deposition focused on the asbestos contained within Kaiser Gypsum’s products as well as Kaiser Gypsum’s manufacturing and distribution capabilities. Specifically, Kirk testified that Kaiser Gypsum’s wallboard never contained asbestos, while its pre-mixed compounds contained 2% asbestos. He also testified that Kaiser Gypsum did not sell its joint compound on the East Coast prior to 1968, and it began placing warnings on its joint compound packaging beginning in 1972.
*906 The Riches objected to both depositions, arguing that section 90.804, Florida Statutes, requires that the party against whom the testimony is being used be in direct privity with his predecessor in interest. Alternatively, the Riches argued that they did not share a similar motive for cross-examination with the plaintiffs in the Kavanaugh and Rendle cases. Their objections were overruled, and portions of the depositions were read to the jury. Ultimately, the jury returned a verdict in favor of all of the defendants.
Florida amended the Evidence Code in 1978 when it enacted Section 90.804, Florida Statutes, which provides as follows:
(2) Hearsay exceptions. — The following are not excluded unders. 90.802 provided that the declarant is unavailable as a witness:
(a) Former testimony. — Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or re-direct examination.
This original language still remains in effect. Since the section’s enactment, there have been no appellate decisions in Florida defining the term “predecessor in interest.”

The Legislative History of Section 90.804, Florida Statutes

Prior to the enactment of section 90.804, former testimony was governed by section 92.22, Florida Statutes. Under that statute, evidence from a previous trial would be admissible at a later trial if the following five conditions were met:
(1) Such evidence has at such former trial been reported stenographically or reduced to writing in the presence of the court;
(2) That the party against whom the evidence is offered, or his privy, was a party on the former trial;
(3) That the issue is substantially the same in both cases;
(4) That a substantial reason is shown why the original witness or document is not produced; and
(5) That the court is satisfied that the report of such evidence taken at such former trial is a correct report.
§ 92.22, Fla. Stat. (1969) (emphasis added). Thus, the former rule was amended, among other things, to require a predecessor in interest, rather than a privy. “When the legislature makes a substantial and material change in the language of a statute, it is presumed to have intended some specific objective or alteration of the law, unless a contrary indication is clear,” and “[w]e must give due significance to such a change.” Caruso v. Caruso, 814 So.2d 498 (Fla. 4th DCA 2002) (citations and internal quotation marks omitted).
Section 92.22’s requirement that the former testimony must be introduced against a “privy” of the party against whom it is offered was narrowly construed in Osburn v. Stickel, 187 So.2d 89 (Fla. 3d DCA 1966). In holding that the driver and passenger were not in privity regarding their separate lawsuits against the driver of the other vehicle, the court determined that there must be a “mutual or successive relationship to the same right,” and rejected the argument that the driver and passenger were in privity because the passenger’s “right to recover, if any, was not dependent upon the right of recovery of the [driver] in the prior trial.” Id. at 91-92. The court adopted its reasoning from *907 case law considering the doctrine of res judicata, noting:
Privity does not arise from the mere fact that persons as litigants are interested in the same question or in proving or disproving the same state of facts. Privity within the meaning of the doctrine of res judicata is privity as it exists in relationship to the subject matter of the litigation, and the rule is construed strictly to mean parties claiming under the same title. It denotes mutual or successive relationship to the same right or property.
Id. at 92 n. 2 (emphasis added) (quoting Sodak Distrib. Co. v. Wayne, 77 S.D. 496, 93 N.W.2d 791, 795 (1958)).
Osbum remained the law in Florida on this issue until the enactment of section 90.804(2)(a). When drafting section 90.804(2)(a), the Law Revision Council cited to Osbum, but made no clear statement of an intention to depart from its holding. The Council noted that some legal scholars believed that strict privity should not be required, and that it “ought, then, to be sufficient to inquire whether the former testimony was given upon such an issue that the party opponent in that case had the same interest and motive in his cross-examination that the present opponent has; and the determination of this ought to be left entirely to the trial judge.... ” Id. (quoting 5 Wigmore, Evidence § 1388 (3d ed. 1940)); see also McCormick, Evidence § 256 (2d ed. 1972) (noting that “identity of parties” is “a convenient phrase to indicate a situation where the underlying requirement of adequacy of the present opponent’s opportunity to cross-examine would usually be satisfied”). The Council, however, did not expressly agree or disagree with either McCormick’s or Wigmore’s treatises, leaving the courts with little guidance for determining the significance of the change in language.

The Legislative History of Federal Rule of Evidence 804(b)(1)

"While it is never cited by the Law Revision Council Notes to section 90.804(2), Federal Rule of Evidence 804(b)(1) was enacted shortly before Florida amended section 90.804. Pub. L. No. 93-595, 88 Stat. 1926-49 (codified as amended at Fed. R. Evid. 804 (1976)). This is significant to our analysis, as it not only uses the term “predecessor in interest,” but the pertinent language in Rule 804(b)(1) mirrors section 90.804(2).[2]
The United States Supreme Court, in its original draft of Rule 804(b)(1), did not use the term predecessor in interest. Clay v. Johns-Manville Sales Corp., 722 F.2d 1289, 1294 (6th Cir.1983). Instead, the original draft of the rule allowed for the admission of prior testimony of an unavailable witness “if the party against whom it is offered or a person ‘with a motive and interest’ similar to him had an opportunity to examine that witness.” Id. (quoting H.R. Rep. 93-650, 93d Cong., 1st Sess. 15 *908 (1973), reprinted in 1974 U.S. CODE CONG. & AD.NEWS 7051, 7088). The House of Representatives amended the rule to apply only to a party’s “predecessor in interest.” Id. In explaining its decision, the House Committee on the Judiciary stated:
The Committee considered that it is generally unfair to impose upon the party against whom the hearsay evidence is being offered responsibility for the manner in which the witness was previously handled by another party. The sole exception to this, in the Committee’s view, is when a party’s predecessor in interest in a civil action or proceeding had an opportunity and similar motive to examine the witness. The Committee amended the Rule to reflect these policy determinations.
Id. The Senate adopted the change proposed by the House, but made its own comments about the House’s changes:
Former testimony.-Rule 804(b)(1) as submitted by the Court allowed prior testimony of an unavailable witness to be admissible if the party against whom it is offered or a person “with motive and interest similar” to his had an opportunity to examine the witness.
The House amended the rule to apply on to a party’s predecessor in interest. Although the committee recognizes considerable merit to the rule submitted by the Supreme Court, a position which has been advocated by many scholars and judges, we have concluded that the difference between the two versions is not great and we accept the House amendment.
Id. (quoting S. Rep. No. 93-1277 (1974), reprinted in 1974 U.S.CODE CONG. & AD.NEWS 7051, 7074). Thus, the legislative history of Rule 804(B)(1) is mixed: the House indicated that the amendment was a significant change, whereas the Senate found it to be of little value.

The Federal Courts’ Interpretation of Rule 804(b)(1)

The federal courts’ interpretation of the Federal Rules of Evidence may be relied upon as a persuasive authority when interpreting the corresponding provisions of the Florida Evidence Code. Yisrael v. State, 993 So.2d 952, 957 n. 7 (Fla.2008) (citing Sikes v. Seaboard Coast Line R.R., 429 So.2d 1216, 1221 (Fla. 1st DCA 1983)); see also Dominique v. Yellow Freight Sys., Inc., 642 So.2d 594, 596 (Fla. 4th DCA 1994) (“[Fjederal decisions interpreting federal rules which are similar to Florida’s rules are persuasive.... ”).
Federal courts have interpreted Rule 804(b)(1) as requiring three things: (1) the declarant is unavailable; (2) the testimony was taken at a hearing, deposition, or civil action or proceeding; and (3) the party against whom the testimony is now offered must have had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Kirk v. Raymark Indus., Inc., 61 F.3d 147, 164 (3d Cir.1995) (citing Fed. R. Evid. 804(a)(5), (b)(1)). Courts have been reluctant to interpret “predecessor in interest” narrowly, instead choosing a broader interpretation that focuses on the similarity of the motives for examination.
In Lloyd v. American Export Lines, Inc., the Third Circuit reviewed the legislative history of Rule 804(b)(1), and agreed with the Senate that the addition of the ‘predecessor in interest’ requirement was not a “compelling difference between the two approaches.” 580 F.2d 1179, 1185 (3d Cir.1978). The court ultimately determined that the rule was designed “to strike a proper balance between the recognized risk of introducing testimony of one not physically present on a witness stand and the equally recognized risk of denying *909 to the fact-finder important relevant evidence.” Id. To that end, the court held that the party against whom the former testimony was being offered need only have shared a “sufficient community of interest” with a party who had the opportunity to examine the witness. Id. “Irrespective of whether the interests could be considered from the individual or public viewpoints, however, the nucleus of operative facts was the same.... And although the results sought in the two proceedings differed ... the basic interest advanced by both was that of determining culpability and, if appropriate, exacting a penalty for the same condemned behavior thought to have occurred.” Id. at 1186.
The Sixth Circuit similarly declined to interpret “predecessor in interest” as requiring privity and adopted the position taken in Lloyd, holding that a “previous party having a like motive to develop the testimony about the same material facts is, in the final analysis, a predecessor in interest to the present party.” Clay, 722 F.2d at 1294-95. In a later case, the court stated that Rule 804(b)(1) requires the moving party to be 1) a predecessor in interest at the former proceeding who 2) had an opportunity and similar motive to develop the testimony. Murphy v. Owens-Illinois, Inc., 779 F.2d 340 (6th Cir.1985). In reviewing its decision in Clay, the court recognized it “has, in effect, collapsed the two criteria into one test.... ” Id. at 343
Other circuits have also determined that “predecessor in interest” does not require privity. See, e.g., Horne v. Owens-Corning Fiberglas Corp., 4 F.3d 276, 283 (4th Cir.1993) (“[P]rivity is not the gravamen of the analysis. Instead, the party against whom the deposition is offered must point up distinctions in her case not evident in the earlier litigation that would preclude similar motives of witness examination.”); see also New Eng. Mut. Life Ins. Co. v. Anderson, 888 F.2d 646 (10th Cir.1989) (relying upon Lloyd ’s holding in determining that the party was not a predecessor in interest). No circuit has “expressly disavowed this interpretation of Rule 804.” Culver v. Asbestos Defendants (BP), 2010 WL 5094698 (N.D.Cal. Dec. 08, 2010).

Florida Statute 90.804(2)(a)

We find the federal interpretation of “predecessor in interest” to be persuasive and hold that section 90.804(2)(a), Florida Statutes, does not require strict privity between a party and his “predecessor in interest.” This interpretation is consistent with providing the requisite due significance to the Florida Legislature’s changes in language as between section 92.22 and 90.804(2)(a). See Caruso, 814 So.2d at 502.
Having made this determination, we now address what the proponent of the former testimony must show 'before it may be admitted at trial. See U.S. v. Kennard, 472 F.3d 851, 856 (11th Cir.2006) (stating that the proponent of the former testimony has the burden of establishing that it is not inadmissible hearsay).
“[T]he questioner must not only be on the same side of the same issue at both proceedings but also must have a substantially similar degree of interest in prevailing on that issue.” U.S. v. DiNapoli 8 F.3d 909, 912 (2d. Cir.1993). A similar motive is not the same as an identical motive, so the inquiry is inherently fact specific. Battle ex rel. Battle v. Mem’l Hosp. at Gulfport, 228 F.3d 544, 552 (5th Cir.2000). “While the availability of foregone cross-examination opportunities is one factor to consider, it is not conclusive because examiners will frequently be able to suggest lines of questioning that were not pursued at a prior proceeding.” U.S. v. Miles, 290 F.3d 1341, 1353 (11th Cir. 2002) (citing DiNapoli, 8 F.3d at 914).
We agree and adopt the Third Circuit’s reasoning: “if it appears that in the former suit a party having a like motive to *910 cross-examine about the same matter as the present party would have, was accorded an adequate opportunity for such examination, the testimony may be received against the present party.” Lloyd, 580 F.2d at 1187 (quoting McCormick on Evidence § 257 p. 261 (2d ed. 1972)).

Application of Section 90.804(2)(a)

We now turn to the facts of the instant case to determine whether the former testimony offered against Rich was properly admitted under section 90.804(2)(a).
In Kavanaugh, the plaintiff alleged that he developed mesothelioma after breathing in Union Carbide’s “Calidria” asbestos contained within Georgia Pacific’s Ready Mix. In the instant case, Fred Rich alleged that he developed mesothelio-ma after breathing in Union Carbide’s “Calidria” asbestos contained within Georgia Pacific’s Ready-Mix. The Estate argues that the plaintiff in Kavanaugh was not its predecessor in interest because there was no similar motive to develop Lehnert’s testimony in Kavanaugh since the product in that case was manufactured in Marietta, Georgia rather than the Akron, New York plant at issue in this case. The substance of the portions of Lehnert’s deposition that were admitted, however, were not specific to the Marietta, Georgia plant. Rather, Lehnert’s testimony was about Georgia Pacific’s general use of asbestos, including its decision to remove asbestos from its products, the notice and information that it had at the time it made the decision, and how it implemented the decision.
We find that the plaintiff in Kavanaugh was the Riches’ predecessor in interest. The two cases share the same defendant, the same ingredient, the same product, the same injury, and the same issues regarding Georgia Pacific’s general use of asbestos. The parties shared a substantially similar interest in cross-examining Leh-nert on the topics of his testimony. See Johns-Manville Sales Corp. v. Janssens, 463 So.2d 242 (Fla. 1st DCA 1984) (noting that the “test for admissibility does not depend on any factors affecting motive for cross-examination other than the existence of substantial similarity of issues giving rise to a similar motive to develop the testimony through cross-examination”). Under these facts, the Riches shared a similar motive for examination with the party that examined William Lehnert in Kavanaugh. The trial court acted within its discretion when it admitted Lehnert’s deposition under section 90.804(2)(a).
In Rendle, the plaintiff alleged that he developed mesothelioma after breathing in asbestos contained within Kaiser Gypsum’s pre-mixed joint compound. In the instant case, Fred Rich alleged that he developed mesothelioma after breathing in asbestos contained within Kaiser Gypsum’s powdered joint compound mix. The cases share a defendant and an injury, but the allegations involved two entirely different products. An entirely different product in a products liability case is the type of distinction that would “preclude similar motives of witness examination.”[3] Home, 4 F.3d at 283. The evidence at trial established that every product has a unique chemical composition, and courts have been reluctant to find a similar motive when dealing with various forms of asbestos. See, e.g., Lohrmann v. Pittsburgh *911 Corning Corp., 782 F.2d 1156, 1161 (4th Cir.1986) (holding that trial court correctly-refused to admit former testimony when the prior proceeding related to asbestos in its raw form while the current proceeding related to asbestos in its processed form).
Nevertheless, we find that any error in admitting Kirk’s deposition was harmless. See Special v. Baux, 79 So.3d 755, 771 (Fla. 4th DCA 2011) (“To avoid a new trial, the beneficiary of the error in the trial court must show on appeal that it is more likely than not that the error did not influence the trier of fact and thereby contribute to the verdict.”), rev. granted sub nom., Special v. W. Boca Med. Ctr., 90 So.3d 273 (Fla.2012). The most damaging evidence presented by the deposition was Kirk’s testimony that Kaiser Gypsum did not begin distributing joint compound mix to the New York area until the 1960s or early 1970s (after Fred Rich had switched to Georgia Pacific’s pre-mixed joint compound). This evidence was cumulative when viewed in light of other evidence relied upon by Kaiser Gypsum at trial. In its answer to the Riches’ interrogatories, Kaiser Gypsum swore it did not manufacture one-day joint compound until 1968. Additionally, Kaiser Gypsum did not rely upon Kirk’s testimony during its closing argument. Counsel for Kaiser Gypsum only argued that Fred Rich could not have bought its powdered joint compound prior to 1968. It is more likely than not that any error in admitting Kirk’s deposition did not influence the jury.
Because we have determined that the additional issues raised lack merit, we affirm the verdict and judgment.

Affirmed.

GROSS and LEVINE, JJ., concur.

. Fred Rich passed away while this appeal was pending.

. Rule 804(b)(1), when it was enacted, allowed for the use of an unavailable witness’s former testimony if certain requirements were met:
(b) Hearsay exceptions. — The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
(1) Former testimony. — Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.
(Emphasis added). Rule 804(b)(1) was amended in 2011, but the amendment was "intended to be stylistic only.” Advisory Committee Notes to 2011 Amendment to Fed. R. Evid. 804. There was “no intent to change any result in any ruling on evidence admissibility.” Id.

. We acknowledge Kaiser Gypsum’s argument that a great deal of Kirk’s deposition was historical in nature and therefore admissible in the instant case. See Dykes v. Raymark Indus., Inc., 801 F.2d 810, 817 (6th Cir.1986) (noting that testimony relating to historical facts is not the type of testimony that is normally subject to refutation on cross-examination). This does not render the prejudicial portion of Kirk’s deposition dealing with Kaiser Gypsum’s products admissible. See Murphy v. Owens-Illinois, Inc., 779 F.2d 340, 344 (6th Cir. 1985).