Virginia **HARRISON, Individually and for the use and benefit of the next of kin of Kenneth R. Harrison, deceased, Plaintiff,**

v.

**The CELOTEX CORPORATION, et al., Defendants.**

No. 1–83–610.

United States District Court, E.D. Tennessee, S.D.

April 13, 1984.

H. Douglas Nichol, Gillenwater, Nichol & Ames, Knoxville, Tenn., for plaintiff.

Martin L. Ellis, Butler, Vines, Babb & Threadgill, Knoxville, Tenn., for The Celotex Corp.

Paul Campbell, III, Campbell & Campbell, Chattanooga, Tenn., for Pittsburgh-Corning Corp.

William A. Young and Russell D. Carroll, Taylor & Groover, Knoxville, Tenn., for Fibreboard Corp.

Hugh J. Moore, Jr., Witt, Gaither & Whitaker, Chattanooga, Tenn., for GAF Corp.

Louis C. Woolf, Hugh B. Bright, Jr., Imogene King, Knoxville, Tenn., for Owens-Illinois, Inc.

## MEMORANDUM

MILBURN, District Judge.

This is a products liability action in which the plaintiff alleges that her husband was fatally injured by reason of exposure to asbestos-containing products manufactured and sold by the defendants. Liability is

asserted solely on the basis of strict liability in tort. *Restatement (Second) of Torts* § 402A (1965); Tenn.Code Ann. §§ 29–28–101, *et seq.* (Tennessee Products Liability Act). The Court's subject matter jurisdiction has been invoked under 28 U.S.C. § 1332, and is not disputed. The case is now before the Court upon the plaintiff's motion for partial summary judgment. (Court File # 12).

As in any asbestos case based on products liability, one of the issues before the Court is whether the defendants' asbestos-containing products are defective and unreasonably dangerous. This issue was litigated and lost by four of the present defendants—GAF Corp., Pittsburgh-Corning Corp., Celotex Corp., and Fibreboard Corp.—in *Richardson v. Johns-Manville Sales Corp.*, No. 81–3648 (M.D.Tenn. Dec. 21, 1983). In her motion for partial summary judgment, plaintiff, not a party to the previous action, seeks to collaterally estop these defendants from relitigating this issue in this case on the basis of the judgment in *Richardson*.

### A.

■ A preliminary issue that must be addressed is whether the state or federal law of collateral estoppel (or, as it is often called, issue preclusion) is to be applied. The jurisdictional basis of the first action and of this action is diversity of citizenship. This means, of course, that state law (that is, Tennessee law) supplies the rule of decision. 28 U.S.C. § 1652; *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The issue is, then, whether *Erie* mandates that a federal court sitting in diversity apply state law when determining the preclusive effect of a prior federal diversity judgment, or whether a federal court is free to apply federal law in determining the scope and effect of the judgment of another federal court.

The issue is not academic. In certain cases, the United States Supreme Court has abrogated the common-law rule that in order to apply collateral estoppel there must be mutuality of estoppel; that is, that both parties in the second action must be bound by the judgment in the previous action, *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); and. has given the lower courts the discretion to determine whether offensive nonmutual preclusion should be applied. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). On the other hand, the rule in Tennessee is that mutuality of estoppel is required before offensive collateral estoppel may be applied. *See Cole v. Arnold*, 545 S.W.2d 95 (Tenn.1977); *Algood v. Nashville Machine Co.*, 648 S.W.2d 260 (Tenn.App.), *permission to appeal denied* (Tenn.1983); *Booth v. Kirk*, 53 Tenn.App. 139, 381 S.W.2d 312 (1963).

The cases decided by the Supreme Court do not necessarily control the choice of law issue here. *Blonder-Tongue* was a patent case in which federal jurisdiction was exclusive. 28 U.S.C. § 1338(a). *Parklane Hosiery* was a shareholders' derivative action in which both the first and second cases were based upon federal questions. 439 U.S. at 324, 99 S.Ct. at 648, 58 L.Ed.2d at 558. In neither of these cases was *Erie* implicated.

The law in this circuit was apparently settled for some time, but is no longer as clear as it once was. In *Hackler v. Indianapolis & Southeastern Trailways, Inc.*, 437 F.2d 360 (6th Cir.1971) the Sixth Circuit stated without equivocation that in a diversity case state law controlled the application of collateral estoppel. *Id.* at 362. Two recent cases have, however, somewhat muddied the waters. In *Patrick v. South Central Bell Telephone Co.*, 641 F.2d 1192 (6th Cir.1980) the plaintiff, Patrick, sued South Central Bell for personal injuries. Bell then sued the City of Columbia for indemnity on a contract. On the trial of the main action, the jury found that Patrick had not been contributorily negligent, and Bell was found liable. One of Bell's theories against Columbia in the third-party indemnity action that followed was that Patrick's co-workers, employees of the Columbia Power System, were negligent, and their negligence should be imputed to the third-party defendant as their superior.

The Sixth Circuit held that Bell was collaterally estopped from raising the issue in the third-party action.

Even though the rule applied was clearly defensive collateral estoppel—that is, Columbia set up the prior judgment as a defense to Bell's third-party action—the court described the estoppel as offensive, and analyzed the issue in those terms. Because of the confusion of the terms, the value of this case is somewhat limited. It does evince, however, the inclination of the Sixth Circuit to apply the federal law of preclusion, as set out in *Parklane Hosiery*, to a diversity case.

In *Clay v. Johns-Manville Sales Corp.*, 722 F.2d 1289 (6th Cir.1983), the Sixth Circuit, in an asbestos case, commended the *Parklane Hosiery* case to the district judge's attention in order to determine the preclusive effect of a prior federal diversity judgment. *Id.* at 1295. Again, the court presumed, without analysis, that the federal law of issue preclusion would apply when both the prior case and the second case were based on diversity of citizenship—hereinafter described as the diversity—diversity context.[1]

The law is somewhat more settled in the Fifth Circuit. Beginning with *Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5th Cir.), *appeal dismissed and cert. denied sub nom, Metropolitan Dade County v. Aerojet-General Corp.*, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975), that court has consistently held that the preclusive effect of a prior federal judgment is to be determined by federal law. *See Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241 (5th Cir.1983); *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334 (5th Cir.1982); *Reimer v. Smith*, 663 F.2d 1316 (5th Cir.1981).

The commentators exhibit no more agreement on this question than do the courts. The argument that federal law

should apply is cogently set out in Degnan, *Federalized Res Judicata*, 85 Yale L.J. 741 (1976). The other view is explained in 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4472 (1981) [hereinafter Wright & Miller].

The issue is not simple, and its resolution requires the balancing of several competing interests. It should be understood first that neither the Full Faith and Credit Clause of the Constitution, U.S. Const. art. IV, § 1, nor the implementing statute, 18 U.S.C. § 1738, has any application to the present problem. Full faith and credit applies only to judgments of the courts of another sovereign: that is, the effect of a state judgment in the court of another state, and the effect of a state judgment in a federal court. The Supreme Court by judicial decision added the rule that full faith and credit must be given by a state court to the judgment of a federal court. *Crescent City Live Stock Co. v. Butchers' Union Slaughter-House Co.*, 120 U.S. 141, 7 S.Ct. 472, 30 L.Ed. 614 (1887); *Embry v. Palmer*, 107 U.S. (17 Otto) 3, 2 S.Ct. 25, 27 L.Ed. 346 (1882); *Dupasseur v. Rocheseau*, 88 U.S. (21 Wall.) 130, 22 L.Ed. 588 (1874). The question is solely one of res judicata. *Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244 (1931). This does not, of course, resolve the issue, but it does serve to eliminate some irrelevant matters from consideration. The question now may be narrowed to whether the state or federal law of res judicata applies.[2]

In both the prior case, *Richardson*, and the present case, the courts have been required to apply Tennessee substantive law. This is, of course, the result required by *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In construing the Rules of Decision Act, 28 U.S.C. § 1652, the Court in *Erie* said:

party to the prior action. *See* Note, *Collateral Estoppel of Nonparties*, 87 Harv.L.Rev. 1485 (1974).

**1.** Another interesting point about *Clay* is that the only defendant in the case was not a party to the previous case, *Borel v. Fibreboard Paper Prods. Corp.*, 493 F.2d 1076 (5th Cir.1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974). Thus, the court has apparently left open the possibility that offensive issue preclusion may be applied when neither party was a

**2.** Clearly, the Court is concerned only with the collateral estoppel, or issue preclusion, aspect of res judicata.

Except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the state.... There is no federal general common law.[3]

304 U.S. at 78, 58 S.Ct. at 822, 82 L.Ed. at 1194.

The Court in *Erie* in stating the principle did not resolve questions of its application. The question whether a particular point is to be governed by state or federal law in a case in which state law supplies the rule of decision has long vexed the courts. In analyzing such questions, three cases deserve attention.

In deciding whether a federal court sitting in equity and in diversity could ignore a state statute of limitations, the Court in *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945) held that *Erie* required that the state statute be applied. Justice Frankfurter, speaking for the Court, stated:

[S]ince a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State.

*Id.* at 108–09, 65 S.Ct. at 1469–70, 89 L.Ed. at 2086. The Court went on to note that while the substantive-procedural dichotomy, which had developed after *Erie*, might be useful for some purposes, it could not be transferred in toto to *Erie* problems. Something that is procedural for choice of law purposes, for example, could well be substantive for *Erie* purposes, as was the case in *Guaranty Trust*.

Justice Frankfurter stated that the purpose of *Erie*

was to insure that, in all cases where a federal court is exercising jurisdiction

solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a state court.

*Id.* at 109, 65 S.Ct. at 1470, 89 L.Ed. at 2086. This is the origin of the oft-stated rule that in a diversity case the state rule should be applied if it would be outcome-determinative.

Much difficulty arose in the application of the outcome-determinative test. "Applied literally, very little would remain of the Federal Rules of Civil Procedure in diversity cases inasmuch as almost every procedural rule may have a substantial effect on the outcome of a case." 19 Wright, Miller & Cooper § 4504 at 27 (1982). It is clear that carried to its extreme the outcome-determinative test could lead to absurd results. Recognizing this, the Supreme Court limited the rule's application in *Byrd v. Blue Ridge Rural Electric Cooperative, Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

In *Byrd* the plaintiff sued the defendant power company for personal injuries in federal court, with jurisdiction grounded on diversity of citizenship. The defendant asserted that the plaintiff was its employee, and thus it was entitled to immunity under the South Carolina workers' compensation statute. The rule in South Carolina was that the factual issues raised by this defense were to be decided by the court. The federal rule, under the Seventh Amendment, was, and is, that all factual issues were to be tried to the jury.

In deciding whether *Erie* required the application of the state rule, the Court engaged in a three-step analysis. First, the question was "whether the South Carolina rule ... was 'bound up' with 'state-created

---

**3.** It is interesting that during the same decade that the Supreme Court overruled *Swift v. Tyson*, 41 U.S. (16 Pet.) 1, 10 L.Ed. 865 (1842), which had held that, in effect, federal courts were to apply their own common law, Congress passed the Rules Enabling Act, 28 U.S.C. § 2072, which repealed The Conformity Act of June 1,

1872. Ch. 255, 17 Stat. 196, (repealed in 1934). The Conformity Act required federal courts to conform their procedures to those existing in the courts of the state in which they sat. Thus, in fewer than five years, federal practice was turned on its head.

rights and obligations' in such a way that the federal courts were required under *Erie* to apply the state rule in diversity cases." 19 Wright, Miller & Cooper § 4504 at 29. The Court found that it was not. Next, the Court had to decide whether the state rule must be followed by the federal court, even though it was not "bound up" with state-created rights. In this part of the analysis, the Court said that *York's* outcome-determinative test was not the only factor to be considered, but rather had to be balanced against any countervailing considerations. 356 U.S. at 537–38, 78 S.Ct. at 901, 2 L.Ed.2d at 962–63. In the opinion of the Court, the federal policy in favor of jury trial weighed heavier in the balance. Third, the Court weighed the probability that to refuse to apply the state rule would result in a different outcome. The Court concluded, "[T]he likelihood of a different result is [not] so strong as to require the federal practice of jury determination of disputed factual issues to yield to the state rule in the interest of uniformity of outcome." *Id.* at 540, 78 S.Ct. at 902, 2 L.Ed.2d at 964.

The third case of interest is *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), which was concerned with whether state or federal rules regarding service of process were to govern in a federal diversity suit. The limited holding in *Hanna* is relatively simple: when a matter is the subject of a federal rule of civil procedure, and is within the Rules Enabling Act, 28 U.S.C. § 2072, then the federal rule controls. The Court recognized that the application of the federal rule in *Hanna*, Fed.R.Civ.P. 4(d)(1), would be outcome-determinative, but it went on to observe that the application of the federal rule would not impinge upon the twin policies underlying *Erie:* That is, to prevent forum-shopping, and to avoid the inequitable administration of the laws. 380 U.S. at 468, 85 S.Ct. at 1142, 14 L.Ed.2d at 15. Of present interest, however, as stated by Wright and Miller, "*Hanna* in effect holds that when there is no Federal Rule directly in point, a federal court must decide whether to apply state law according to the Rule of Decision Act guided by 'the twin arms of

*Erie:* discouragement of forum-shopping and avoidance of inequitable administration of the laws.' " 19 Wright, Miller & Cooper § 4504 at 42.

While it is not necessarily difficult to state the holdings of these cases, it is no simple matter to apply them to a set of facts in a particular case. That is, however, what the Court must now endeavor to do. In *York*, Justice Frankfurter was concerned that there should be no difference between the way a state and federal court would resolve a dispute of a state-created right. 326 U.S. at 108–09, 65 S.Ct. at 1469–70, 89 L.Ed. at 2086. In the case at bar it is beyond dispute that state law will provide the rule of decision; it must be remembered, however, that this motion for partial summary judgment is concerned only with the preclusive effect of a prior federal judgment. Thus, the right upon which plaintiff's motion depends is federally-created, notwithstanding that the prior judgment was also in a diversity case.

This distinction applies with equal force to the first prong of the *Byrd* analysis. Since the right is federally-created, it cannot be bound up with state-created rights and obligations.

Even so, the Court might be bound to apply the state rules if there were no countervailing federal policy, thus effecting the balancing test required by the second prong of *Byrd*. But there is such a countervailing federal policy. "One of the strongest policies a court can have is that of determining the scope of its own judgments." *Kern v. Hettinger*, 303 F.2d 333, 340 (2d Cir.1962). In addition, under the third part of *Byrd*, the refusal to apply the state law of collateral estoppel is not necessarily outcome-determinative. It could be so, of course, depending on the facts presented, but, as in *Byrd*, this possibility is not so strong as to require the federal policy to yield. *See Miller v. Davis*, 507 F.2d 308, 314 (6th Cir.1974).

The same result obtains under the analysis set forth in *Hanna*. The application of federal law would not jeopardize the twin arms of *Erie* as identified in *Hanna*.

There is no danger of forum-shopping if this Court applies the federal rule. Assuming the existence of a prior federal court judgment, the result in the second court would be the same whether the plaintiff filed in state or federal court. This is so because the full faith and credit statute requires that state courts give the same faith and credit to other judgments as they enjoy by law or usage in the court of rendition. 28 U.S.C. § 2072; *see Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241, 243–44 n. 2 (5th Cir.1983). This same reason supports the conclusion that the application of the federal rule would not result in inequitable administration of the laws. The law applied would, as stated above, be the same whether in state or federal court.[4]

In conclusion, the Court is of the opinion that *Erie* does not require the application of the state law of issue preclusion in this case, and, therefore, that federal law applies.

### B.

■ Having decided that the federal law of issue preclusion applies does not, of course, end the inquiry. In a case such as this, where the plaintiff is seeking to invoke the doctrine of nonmutual offensive issue preclusion, it is incumbent upon the Court to determine whether the preclusion sought is appropriate. The Court is guided in this determination by the opinion of the United States Supreme Court in *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). *See The Supreme Court, 1978 Term*, 93 Harv.L.Rev. 60, 219 (1979). The Supreme Court abandoned the mutuality requirement in the application of defensive collateral estoppel in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). The *Parklane Hosiery* court recognized, however, that there were reasons why defensive and offensive collateral estoppel should be treated differently, but instead of prohibiting the use of offensive collater-

al estoppel, granted the federal trial courts "broad discretion to determine when it should be denied." 439 U.S. at 331, 99 S.Ct. at 651, 58 L.Ed.2d at 562. The Court then stated as a general rule that

in cases where a plaintiff could easily have joined in the earlier action or where, either for the reasons discussed above or for other reasons, the application of offensive collateral estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel.

*Id.*, 439 U.S. at 331, 99 S.Ct. at 652, 58 L.Ed.2d at 562. The "reasons discussed above" were, first, that offensive use of collateral estoppel does not promote judicial economy as does the defensive use. *Id.* at 329–30, 99 S.Ct. at 650–51, 58 L.Ed.2d at 561. The second reason was that the offensive use may be unfair to the defendant. *Id.* at 330, 99 S.Ct. at 651, 58 L.Ed.2d at 561. The Court identified three circumstances in which this unfairness could occur: (1) where the defendant was sued in the first action for small or nominal damages, thus having little incentive to defend vigorously; (2) where the judgment relied upon is inconsistent with other prior judgments; and (3) "where the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result." *Id.* at 331, 99 S.Ct. at 651, 58 L.Ed.2d at 562.

In the application of these principles to the present case, the Court has considerable guidance from *Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334 (5th Cir. 1982), *see also Restatement (Second) of Judgments* § 29 (1981), and is of the opinion that this issue may be disposed of without extended discussion. The Court will assume, without deciding, that the plaintiff can show that the jury in *Richardson* found that asbestos-containing products are defective and unreasonably dangerous, that this issue was actually litigated, and

---

**4.** If this Court were to apply state preclusion law, an anomolous result would be reached: The state court would properly apply federal law, and the federal court would apply state law. For this reason, it appears that the application of state law in this case would do more violence to *Erie* than would the use of federal law.

that the determination of this issue was necessary and essential to the resulting judgment. *Hardy*, 681 F.2d at 341; *International Ass'n of Machinists & Aerospace Workers v. Nix*, 512 F.2d 125, 132 (5th Cir.1975). Even assuming this, however, there is another factor that prevents the application of preclusion in this case: the presence of prior inconsistent judgments. According to the affidavit of Michael Douglas, legal counsel for Celotex, one of the defendants plaintiff seeks to preclude, Celotex has been a defendant in thirty-five asbestos cases where the jury returned verdicts for the defendants. (Court File # 19). In *Hardy* the court noted that of the approximately seventy asbestos cases that had gone to judgment, about half had been decided in favor of the defendants. It seems most inappropriate for this Court to pick out one case upon which the jury reached a verdict for the plaintiff, and accord it preclusive effect, and at the same time to ignore all the others in which equally competent juries have reached the opposite conclusion.

There may be other reasons that offensive preclusion should not be allowed in this case (such as, for example, the plaintiffs' decedents were employed in different occupations, and thus can be assumed to have been exposed to different types of asbestos), but it is, in the Court's opinion, unnecessary to discuss them, since the Court has concluded that the presence of inconsistent previous verdicts makes the application of preclusion in this case unfair.

An order overruling the plaintiff's motion for partial summary judgment will enter.