**COLUMBIA PICTURES INDUSTRIES, INC.; Metro–Goldwyn–Mayer, Inc.; Paramount Pictures Corporation; Tristar Pictures, Inc.; Twentieth Century Fox Film Corporation; Universal City Studios, Inc.; United Artists Pictures, Inc.; Disney Enterprises, Inc.; Warner Bros.; Foxvideo, Inc.; Live Home Video, Inc. (Live America, Inc.); Columbia Tristar Home Video; Savoy Pictures Entertainment, Inc., Plaintiffs,**

v.

**T & F ENTERPRISES, INC. a/k/a T & P Enterprises, Inc. d/b/a Four Star Video & Communications at 1637/1643 West Road, Trenton, Michigan 4183, Thamir Yousif and Fred Chirco, individually, Defendants.**

No. Civ.A. 96–40442.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 26, 1999.

---

Eric Nemeth, Raymond & Prokop, Southfield, MI, for Plaintiffs.

Richard G. Brewer, Stephen M. Friedman, Meklir, Nolish, Southfield, MI, for Defendants.

### MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before this Court is a motion by Plaintiffs for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court: (1) grants Plaintiffs' Motion for Summary Judgment on the issue of Defendants' liability for copyright infringement; (2) orders that a judgment be entered in favor of Plaintiffs in the amount of $500 for each of the 363 copyrighted works infringed by Defendants; (3) enters a permanent injunction enjoining Defendants from infringing Plaintiffs' copyrights; (4) orders that the videocassettes in question seized from Defendants be returned to Plaintiffs; and (5) awards attorneys fees to Plaintiffs in an amount to be determined following submissions by Plaintiffs.

**Factual Background**

Plaintiffs are thirteen motion picture corporations and partnerships that hold the copyrights or exclusive licenses under the copyrights to various motion pictures released for distribution on videocassette. Defendant T & F Enterprises, Inc. a/k/a T & P Enterprises, Inc. d/b/a Four Star Video & Communications (hereinafter "Four Star Video") operated a video rental business out of a store located in Trenton, Michigan. Defendants, Fred Chirco a/k/a Fred Chaffee and Thamir Yousif a/k/a Tom Chaffee, were at all relevant times officers of Four Star Video.

On April 19, 1996, the Federal Bureau of Investigation executed a search warrant at Defendants' place of business. The FBI seized 440 videocassette copies of motion pictures. Plaintiffs contend that at least one of the Plaintiffs in this case owns or holds an exclusive copyright interest in each of the motion pictures seized in the raid. Defendants purchased pirated copies of the motion pictures on videocassettes and offered them for distribution to the general public without permission from any Plaintiff. Plaintiffs contend that the 440 videocassettes seized from Defendants infringed 363 motion picture works copyrighted by Plaintiffs.

Subsequent to the raid, Defendants Chirco and Yousif were charged with conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and criminal

infringement of a copyright in violation of 18 U.S.C. § 2319(b)(1) and (2). On November 11, 1997, both Chirco and Yousif pleaded guilty to engaging in a conspiracy to defraud the United States in plea agreements pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The plea agreements provide, in pertinent part:

A. [Defendants] shall enter a plea of guilty to count *one* of the Indictment.

B. The elements of the offense(s) are:

(i) First, that two or more persons conspired, or agreed, to commit the crime of infringing copyrights in a substantial number of motion pictures.

(ii) Second, that the [Defendants] knowingly and voluntarily joined the conspiracy.

(iii) Third, that a member of the conspiracy did one of the overt acts described in the indictment for the purpose of advancing or helping the conspiracy.

C. The parties stipulate to the following, which the government is prepared to prove, as an accurate factual basis for [Defendants'] guilty plea:

The [Defendants] knowingly and willfully agreed ... to obtain personal financial gain and commercial advantage by illegally purchasing and renting over 400 pirated video cassette movies between September, 1995, and May, 1996. In furtherance of the agreement, [Defendants] purchased pirated video cassette movies from an undercover FBI agent at prices below retail and then rented the movies to the general public at [their] store.... Both the purchase of the pirated video cassette movies and rental to customers occurred in the Eastern District of Michigan between the dates mentioned above.

Pls.' Mot. for Summ.J., Ex. 4, ¶ 1 (emphasis in original). Ultimately, Chirco was sentenced to a term of probation of two years and ordered to pay $25,700 in restitution to the Motion Picture Association of America. Yousif was sentenced to a term of probation of three years and ordered to pay $55,700 in restitution to the Motion Picture Association of America.

On December 12, 1996, Plaintiffs filed a Complaint alleging various violations of the Copyright Act, 17 U.S.C. § 101, *et seq.* On May 27, 1999, Plaintiffs filed the instant Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56.

## Discussion

### 1. Standard for summary judgment pursuant to Rule 56

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Martin v. Ohio Turnpike Commission,* 968 F.2d 606, 608 (6th Cir.1992). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause

of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, where a reasonable jury could not find that the nonmoving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Id.; Feliciano v. City of Cleveland,* 988 F.2d 649, 654 (6th Cir.1993).

Once the moving party carries its initial burden of demonstrating that no genuine issue of material fact is in dispute, the burden shifts to the nonmoving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the nonmoving party must present more than just some evidence of a disputed issue. As the United States Supreme Court has stated:

> [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmoving party's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted); *see Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Consequently, the nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

### 2. Analysis

#### a. Liability

Section 106 of the Copyright Act provides, in relevant part:

> Subject to sections 107 through 121, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords; ... [and]
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of the ownership, or by rental, lease, or lending....

17 U.S.C. § 106.

The parties agree that to establish a prima facie case of copyright infringement in this case, Plaintiffs must show: (1) that they own valid copyrights in the motion pictures represented on the video cassettes seized by the FBI from Defendants; and (2) that Defendants violated one or more of the exclusive rights granted Plaintiffs in 17 U.S.C. § 106 by copying or distributing Plaintiffs' copyrighted motion pictures without authorization. *See Hasbro Bradley, Inc. v. Sparkle Toys, Inc.,* 780 F.2d 189, 192 (2d Cir.1985).

In support of the element of ownership of the various copyrights at issue in this case, Plaintiffs have submitted the affidavit of Linda Braun, a copyright and title specialist employed by the Motion Picture Association of America. Braun avers that the Association maintains copyright certificates and other information related to motion pictures in which Plaintiffs have copyright interests. Braun's affidavit indicates that, in comparing this copyright information with the list of motion picture video cassettes seized from Defendants by the FBI in this case, she was able to determine that the Defendants' activities implicated 363 valid copyrights owned by Plaintiffs.

In support of the element of copying or distributing without authorization, Plaintiffs rely on the guilty pleas tendered by Yousif and Chirco in the prior criminal action. Plaintiffs assert that, pursuant to

the Rule 11 plea agreements, Yousif and Chirco admitted that they had been involved in a conspiracy "to infringe motion picture copyrights." Moreover, the factual basis asserted for the pleas indicates that Defendants knowingly and willfully agreed "to obtain personal financial gain and commercial advantage by illegally purchasing and renting over 400 pirated video cassette movies ... [and that Defendants] purchased pirated video cassette movies ... at prices below retail and then rented the movies to the general public...." Plaintiffs contend that by virtue of the Rule 11 agreements, Yousif and Chirco have admitted that they infringed Plaintiffs' copyrights by purchasing pirated copies of motion picture video cassettes and distributing them to the public without authorization. Plaintiffs argue that Yousif and Chirco are collaterally estopped from denying liability for copyright infringement in this action by virtue of their admissions in the prior criminal case.

■ In response, Defendants first claim that their guilty pleas in the prior criminal case are not admissible as evidence in this case pursuant to the Michigan case of *Wheelock v. Eyl*, 393 Mich. 74, 223 N.W.2d 276 (1974). In *Wheelock*, the Michigan Supreme Court held that guilty pleas may not be admitted as evidence in a civil trial for the purpose of showing that substantially the same wrongful conduct at issue in the civil trial has been committed. Defendants contend that Michigan law controls this case pursuant to doctrine established in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and accordingly, that the guilty pleas are not admissible as evidence. This Court rejects Defendants' first argument because Michigan law does not control the issue of admissibility of the guilty pleas. This is not an action in which jurisdiction is based on diversity of citizenship. Rather, this action is brought pursuant to a federal statute, namely the Copyright Act. Accordingly, the *Erie* doctrine is not applicable to this case, and Defendants' reliance on *Wheelock* is misplaced.

■ The application of the doctrine of collateral estoppel in this case is governed by federal law. Federal courts have consistently held that, under appropriate circumstances, the doctrine of collateral estoppel may apply to issues litigated in a criminal case, even by virtue of a guilty plea, which a party seeks to relitigate in a subsequent civil proceeding. *See, e.g., Gray v. Commissioner of Internal Revenue*, 708 F.2d 243, 246 (6th Cir.1983) (applying doctrine of collateral estoppel to prevent the defendant from denying liability in civil suit for tax fraud after the defendant pleaded guilty to tax evasion in prior criminal action arising out of same conduct); *United States v. Wight*, 839 F.2d 193, 195 (4th Cir.1987) (applying doctrine of collateral estoppel to prevent the defendant from denying liability in civil suit for fraud after guilty plea in prior criminal action arising out of same conduct); *United States v. Moore*, 765 F.Supp. 1251, 1255 (E.D.Va.1991) (noting that doctrine of collateral estoppel may apply to issues litigated in prior criminal action which a party seeks to relitigate in a subsequent civil action, and that prior litigation may be in the form of plea agreement). Therefore, if this case presents appropriate circumstances for the application of the doctrine of collateral estoppel, then the guilty pleas will certainly be admissible in evidence.

■ Defendants' second argument is that the doctrine of collateral estoppel should not apply in this case because there is a lack of mutuality. Defendants argue that collateral estoppel applies only if the parties in the later case were both parties in the earlier case. Defendants contend that, because Plaintiffs were not a party to the criminal judgment, Plaintiffs are not entitled to the benefit of the preclusive effect of that judgment. While it is true that there was at one time a mutuality requirement in the application of the doctrine of collateral estoppel, the Supreme Court:

has eliminated the requirement of mutuality in applying collateral estoppel to bar relitigation of issues decided earlier in federal court suits, and has allowed a litigant who was not a party to a federal case to use collateral estoppel "offensively" in a new federal suit against the party who lost on the decided issue in the first case.

*Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Accordingly, Defendants may not avoid the doctrine of collateral estoppel by virtue of the lack of mutuality.

█ The remaining question for this Court is whether this case presents an appropriate circumstance for the application of nonmutual offensive collateral estoppel. In *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court granted trial courts broad discretion to determine when application of this doctrine is appropriate. In *Parklane,* the Supreme Court also set forth a number of factors a trial court should consider in making such a determination. Such factors include whether:

1. application of the doctrine is unfair to the defendant under the circumstances;

2. the defendant had a full and fair opportunity to litigate the prior action;

3. the second suit would afford the defendant more advantageous procedural opportunities than those afforded in the first suit;

4. the defendant had incentive to defend vigorously the first suit;

5. the potential damages in the first action were not insignificant;

6. the plaintiff in the second action could easily have joined in the first action; and

7. the judgment relied upon is consistent with other prior judgments.

*See id.* at 329–31, 99 S.Ct. 645; *Harrison v. Celotex Corp.,* 583 F.Supp. 1497, 1502 (E.D.Tenn.1984).

█ Upon review of these factors, this Court finds that this is an appropriate case for the application of the doctrine of nonmutual offensive collateral estoppel. Defendants had an incentive to vigorously defend in the first action, as they were charged with crimes convictions upon which could have resulted in substantial penalties. Defendants have not pointed to any inconsistent prior judgments, nor any circumstances which would indicate that application of the doctrine would be unfair in this case. Accordingly, this Court applies the doctrine to prevent Defendants from denying any of the facts essential to the guilty plea in the prior criminal case.

█ In the guilty pleas, Defendants admitted that they illegally purchased pirated copies of over 400 video cassettes that were ultimately seized by the FBI. Defendants also admitted that they held these video cassettes out for distribution to the general public without authorization from any of the Plaintiffs. Under these circumstances, this Court finds that Plaintiffs have established a prima facie case of copyright infringement under § 106. Against this evidence, Defendants have offered nothing more than conclusory arguments and speculation. Defendants contend that Plaintiffs have not established either that they own the copyrights at issue in this case or that Defendants engaged in infringement under § 106. Defendants do not, however, provide any evidence, by affidavit or otherwise, to support those claims. Plaintiffs have submitted the affidavit of Linda Braun, a copyright specialist with the Motion Picture Association of America, who avers that the various Plaintiffs own the copyright to 363 motion pictures contained on videotapes seized from Defendants. Moreover, unauthorized copying or distribution of motion pictures clearly constitutes infringement under § 106. This Court finds that Plaintiffs have carried their initial burden of demon-

strating that no genuine issues of material fact remain for trial as to liability. The burden shifts to Defendants to produce substantial evidence showing a genuine factual dispute. As set forth above, Defendants must do more than raise some doubt as to the existence of a fact; they must produce evidence that would be sufficient to require submission of the issue to the jury. With respect to the issue of liability in this case, Defendants have produced no such evidence.

Accordingly, for the reasons set forth above, this Court grants Plaintiffs' Motion for Summary Judgment on the issue of Defendants' liability for copyright infringement.

### b. Damages

Pursuant to 17 U.S.C. § 504(c)(1), Plaintiffs are entitled to recover statutory damages in lieu of actual damages. That section specifically provides:

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action ... in a sum of not less than $500 or more than $20,000 as the court considers just.

17 U.S.C. § 504(c)(1). Plaintiffs in this case have elected to pursue statutory damages rather than actual damages and Defendants' profits resulting from the infringement. Plaintiffs have requested an award of statutory damages in the amount of $1,000 for each infringement.

■ It is well settled that "[t]rial courts have wide discretion in setting damages within [the] statutory range [provided in § 504(c)(1)]." *Cross Keys Publishing Co., Inc. v. Wee, Inc.,* 921 F.Supp. 479, 481 (W.D.Mich.1995) (citing *F.W. Woolworth Co. v. Contemporary Arts,* 344 U.S. 228, 231–32, 73 S.Ct. 222, 97 L.Ed. 276 (1952)). In determining the proper amount of statutory damages, courts should consider the following factors:

1. the expenses saved and profits reaped by the defendants in connection with the infringements;
2. the revenues lost by the plaintiffs as a result of the defendants' conduct;
3. the infringers' state of mind whether willful, knowing, or merely innocent; and
4. the goal of deterring wrongful conduct.

*See Cross Keys,* 921 F.Supp. at 481; *Perfect Solutions, Inc. v. Jereod, Inc.,* 974 F.Supp. 77, 84 (D.Mass.1997); *Walt Disney Co. v. Video 47, Inc.,* 972 F.Supp. 595, 603 (S.D.Fla.1996); *Broadcast Music, Inc. v. R Bar of Manhattan, Inc.,* 919 F.Supp. 656, 659–60 (S.D.N.Y.1996).

■ Here, Plaintiffs have not submitted evidence concerning the amount of revenues they lost as a result of Defendants' infringing conduct nor evidence bearing on the expenses saved and profits reaped by Defendants as a result of this conduct. At oral argument, Plaintiffs stated that they would be content with the statutory minimum. Furthermore, this Court does not intend for these damages to be punitive. Therefore, this Court considers the minimum statutory damages appropriate, and awards Plaintiffs $500 for each of the 363 copyright infringements, for a total of $181,500.

Defendants claim that they are entitled to a set off against any damages Plaintiffs are awarded in this case in the amount of the restitution payments Defendants were ordered to make as a part of their judgments of conviction in the prior criminal case. Defendants rely on 18 U.S.C. § 3663(e)(2), which provides, in pertinent part:

> Any amount paid to a victim under an order of restitution shall be set off against any amount later recovered as compensatory damages by such victim in any Federal civil proceeding....

18 U.S.C. § 3663(e)(2)(A). This Court rejects this argument out of hand. Subsection (e) of § 3663, the subsection upon

which Defendants rely, was repealed in 1996. *See* Pub.L. 104–132 § 205(a)(2), 110 Stat. 1214, 1230 (1996). Accordingly, Defendants' reliance on the language set forth above is misplaced, and this Court determines that Defendants are not entitled to a set off in the amount of the restitution payments they were ordered to make as a result of their criminal convictions.

■ Plaintiffs have requested three additional forms of relief in addition to statutory damages. First, Plaintiffs have requested a permanent injunction against Defendants perpetually enjoining Defendants from directly or indirectly infringing any of their copyrighted works. Pursuant to 17 U.S.C. § 502(a):

> Any court having jurisdiction of a civil action arising under this title may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

17 U.S.C. § 502(a). The issuance of an injunction is in the discretion of the court and " 'courts have traditionally granted permanent injunctions if liability is established and a continuing threat to a copyright exists.' " *All Nations Music v. Christian Family Network, Inc.,* 989 F.Supp. 863, 869 (W.D.Mich.1997) (quoting *Swallow Turn Music v. Wilson,* 831 F.Supp. 575, 581 (E.D.Tex.1993)).

Plaintiffs assert in this case that there is a substantial threat of ongoing infringement given the magnitude of Defendants' infringing activities and the relative ease with which such infringement can be perpetrated. Under the circumstances of this case, this Court accepts Plaintiffs' argument on this point, and enters a permanent injunction enjoining Defendants from directly or indirectly infringing on Plaintiffs' copyrighted works.

■ Second, Plaintiffs request that the seized videocassettes be delivered to Plaintiffs for destruction. Pursuant to 17 U.S.C. § 503:

> As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies of phonorecords found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

17 U.S.C. § 503(b). This Court finds that Plaintiffs' request reasonable and orders the return of the videocassettes seized from Defendants.

■ The third form of additional relief requested by Plaintiffs is attorney fees and costs. Pursuant to 17 U.S.C. § 505:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505. The Supreme Court has advised courts to exercise their discretion under § 505 in light of several "nonexclusive" factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 534 n. 19, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994); *see Quinn v. City of Detroit,* 23 F.Supp.2d 741, 752 (E.D.Mich.1998).

There is little evidence in the record from which this Court may make a reasoned evaluation of the factors outlined in *Fogerty.* Accordingly, this Court grants Plaintiffs' request for reasonable attorneys fees for an amount to be determined by the Court following submissions by the Plaintiffs.

**Conclusion**

Accordingly, this Court having reviewed the submissions of the parties, and being fully advised in the premises,

IT IS HEREBY ORDERED that Plaintiffs' Motion for Summary Judgment on the issue of Defendants' liability for copyright infringement is **GRANTED.**

IT IS FURTHER ORDERED that a judgment shall. be entered in favor of Plaintiffs and against Defendants in the amount of $500 in statutory damages pursuant to 17 U.S.C. § 504(c)(1) for each of the 363 copyrighted works infringed by Defendants for a total of $181,500.

IT IS FURTHER ORDERED that Defendants together with their agents, servants, employees, and any other persons or entities in active concert or participation with them, are permanently enjoined from infringing any copyright or exclusive right under copyright owned by, assigned to, licensed to, or otherwise held by any of the Plaintiffs, including but not limited to directly or indirectly duplicating, copying, reproducing, distributing, selling, renting, or offering to sell or rent any videocassette that in whole or in part contains any portion of any motion picture copyrighted by or licensed to any of the Plaintiffs, provided that this injunction shall not prohibit the distributing, selling, renting, or offering to sell or rent any such item when such activity is authorized by the copyright owner or does not infringe or contribute to the infringement of any rights held by any Plaintiff.

IT IS FURTHER ORDERED that all videocassettes made or used in violation of Plaintiffs' exclusive rights, including those by means of which copies may have been produced, shall be returned to Plaintiffs for destruction or other reasonable disposition pursuant to 17 U.S.C. § 503(b).

IT IS FURTHER ORDERED that Plaintiffs shall be awarded reasonable costs and attorneys fees pursuant to 17 U.S.C. § 505 in an amount to be determined following the submission by Plaintiffs of documents supporting such costs and attorneys fees pursuant to Fed. R.Civ.P. 54(d)(2)(B). Defendants may file a response to Plaintiffs' submission no la-

ter than 14 days after service of Plaintiffs' submission.

**SO ORDERED.**